**ORAL ARGUMENT NOT YET SCHEDULED**

APPEAL NO. 16-7124

IN THE

# United States Court of Appeals

## FOR DISTRICT OF COLUMBIA CIRCUIT

PAUL D. CASEY, Individually and as administrator of the
Estate of Patrick D. Casey, *et al.*,

*Plaintiffs-Appellants,*

v.

MCDONALD'S CORPORATION, *et al.*,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

### OPENING BRIEF OF APPELLANTS

Brendan J. Klaproth
D.C. Bar No. 999360
Jesse C. Klaproth
KLAPROTH LAW PLLC
406 5th Street, NW, Suite 350
Washington, DC 20001
Tel: 202-618-2344
bklaproth@klaprothlaw.com
jklaproth@klaprothlaw.com
*Counsel for Appellants*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), Appellants Paul D. Casey and Abigail O. Casey hereby submit this certificate as to parties, rulings, and related cases.

**(A)     Parties and Amici**

Parties

The Appellants (Plaintiffs below) are Paul D. Casey and Abigail O. Casey.

The Appellees (Defendants below) are: (1) McDonald's Corporation; (2) Kyung Rhee (hereinafter "Rhee" and the McDonald's restaurant owned by Mr. Rhee shall be referred to as "Rhee's McDonald's"); (3) R A H of Washington, D.C. Inc., d/b/a as Camelot (hereinafter "Camelot"), and (4) 19th & K Inc., d/b/a Ozio (hereinafter "Ozio").  Camelot and Ozio will collectively be referred to as (the "Bar Defendants").

Jason Ward, Brian Giblin, and Justin Ruark were Defendants in the District Court, but are not parties to this Appeal. Good Life 1831 M LLC, DC Irish LLC, and 1900 M Restaurant Associates Inc. were dismissed from this Appeal.  *See* Order (December 8, 2016).

Intervenors and Amici

There were no intervenors at the District Court.  The Appellants are not aware of any *amici* in this matter.

i

**(B)    Rulings Under Review**

The following rulings are under review:

(1)     Order granting Defendants' Motions to Dismiss (September 5, 2014) (Judge Richard J. Leon).   J.A. 83-85. A memorandum opinion accompanying the order was issued on September 5, 2014. J.A. 68-82.

(2)     Order denying Plaintiffs' Motion for Reconsideration (May 6, 2015) (Judge Richard J. Leon).   J.A. 101-102. A memorandum opinion accompanying the order was issued on May 6, 2015. J.A. 94-100

(3)     Order granting Defendants McDonald's Corporation and Kyung Rhee's Motion for Summary Judgment (September 30, 2016) (Judge Richard J. Leon).   J.A. 1069-1070. A memorandum opinion accompanying the order was issued on September 30, 2016. J.A. 1043-1068.

**(C)    Related Cases**

This case has not previously been before this or any other court.  Counsel for Appellants are not aware of any related cases within the meaning of D.C. Circuit Rule 28(a)(1)(C).

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES.................i

TABLE OF AUTHORITIES.....................................................................v

GLOSSARY OF ABBREVIATIONS ...................................................ix

JURISDICTIONAL STATEMENT ...........................................................1

STATUTES ................................................................................................1

STATEMENT OF ISSUES PRESENTED FOR REVIEW .......................1

STATEMENT OF THE CASE..................................................................3

    I.      Background on Patrick Casey ...............................................3

    II.     Patrick's Assailants Were Overserved with Alcohol ............4

    III.    Patrick Casey is Attacked and Killed at Rhee's McDonald's ..............6

    IV.    Rhee's McDonald's Has a History of Violence....................................9

    V.     Rhee's McDonald's Specifically Caters to Intoxicated Patrons .........11

    VI.    Rhee's McDonald's Failure to Implement Security Measures in Response to the Violence ...................................................12

    VII.   Relationship Between Rhee's McDonald's and McDonald's Corporation...................................................................15

    VIII.  Procedural History.............................................................17

STANDARD OF REVIEW ......................................................................17

SUMMARY OF ARGUMENT.................................................................18

ARGUMENT ...........................................................................................20

    I.      Plaintiffs Filed their Lawsuit Within the Two-Year Statute of Limitations Under the Wrongful Death Act ........................20

II.     Plaintiffs Properly Pled a Dram Shop Claim Against the Bar
        Defendants ................................................................................ 28

III.    Rhee's McDonald's Negligently Failed to Protect Patrick Casey
        From Foreseeable Crime .......................................................... 33

IV.     The District Court Granted Defendants' Motions for Summary
        Judgment Without Ruling on Plaintiffs' Year-old Outstanding
        Motion to Compel Discovery .................................................... 47

V.      Rhee's McDonald's Negligently Failed to Train and Supervise its
        Employees ................................................................................ 49

VI.     McDonald's Corporation's Negligence ..................................... 50

CONCLUSION ............................................................................................ 54

CERTIFICATE OF COMPLIANCE ............................................................ 56

CERTIFICATE OF SERVICE ..................................................................... 56

# TABLE OF AUTHORITIES

## CASES

*Bradley v. School Board of Richmond*,
   416 U.S. 696 (1974)..................................................................................26

*Briggs v. Wash. Metropolitan Area Transit Authority*,
   481 F.3d 839 (D.C. Cir. 2007) ......................................................38, 39, 41

*Butler v. McDonald's Corp.*,
   110 F. Supp. 2d 62 (D.R.I. 2000)..............................................................54

\* *Caldwell v. Bechtel, Inc.*,
   631 F.2d 989 (1980)..............................................................................51, 53

*Childress v. Ky. Oaks Mall Co.*,
   2007 U.S. Dist. LEXIS 69881 (W.D. Ky. Sept. 20, 2007)..................38, 42

*Clark v. Capital Credit & Collection Services*,
   460 F.3d 1162 (9th Cir. 2006) ..................................................................48

*Clark v. District of Columbia*,
   708 A.2d 632 (D.C. 1997)..........................................................................37

*Conesco Industrial, Ltd. v. Conforti & Eisele, Inc.*,
   627 F.2d 312 (D.C. Cir. 1980) ..................................................................45

*Davis v. District of Columbia*,
   No. 2005-CA-8772 (D.C. Super. Ct. Nov., 2010) .....................................26

*District of Columbia v. Doe*,
   524 A.2d 30 (D.C. 1987)............................................................................34

*District of Columbia v. Hampton*,
   666 A.2d 30 (D.C. 1995)............................................................................54

**\*Authorities upon which we chiefly rely are marked with asterisks.**

*Doe v. AE Outfitters Retail Co.*, No. 14-508-WDQ, 2015 U.S. Dist.
LEXIS 169719 (D. Md. Dec. 17, 2015)................................................37, 42

*Drew v. LeJay's Sportsmen's Cafe, Inc.*,
806 P.2d 301 (Wyo. 1991) ........................................................................45

*Girdler v. United States*,
923 F. Supp. 2d 168 (D.D.C. 2013) ..........................................................42

*Godfrey v. Iverson*,
559 F.3d 569 (D.C. Cir. 2009) ..................................................................44

*Hughes Aircraft Co. v. Jacobson*,
525 U.S. 432 (1999)...................................................................................27

*Jarrett v. Woodward Brothers*,
751 A.2d 972 (D.C. 2000)....................................................................29, 32

*Jones v. Kwik Karol & Ginalco, Inc.*,
490 So. 2d 664 (La. Ct. App. 1986)..........................................................45

*Koch v. SEC*,
793 F.3d 147 (D.C. Cir. 2015) ..................................................................27

\* *Landgraf v. USI Film Products*,
511 U.S. 244 (1994)..................................................................23, 26, 27

*Lindh v. Murphy*,
521 U.S. 320 (1997).............................................................................26, 27

*Majeska v. District of Columbia*,
812 A.2d 948 (D.C. 2002).........................................................................32

*Martin v. McDonald's Corp.*,
572 N.E.2d 1073 (Ill. 1991) ......................................................................52

\* *Marusa v. District of Columbia*,
484 F.2d 828 (D.C. Cir. 1973)......................................29, 30, 31, 32, 33

*Miller v. McDonald's Corp.*,
    945 P.2d 1107 (Or. Ct. App. 1997)............................................................54

*Moore v. District of Columbia*,
    79 F. Supp. 3d 121 (D.D.C. 2015) ............................................................49

\* *Novak v. Capital Management & Development Corp., (Novak I)*
    452 F.3d 902 (D.C. Cir. 2006) ...........................................17, 18, 33, 34, 35

\* *Novak v. Capital Management & Development Corp.*, *(Novak II)*
    570 F.3d 305 (2009)...........................................................37, 38, 39, 42

*Owens-Corning Fiberglas Corp. v. Henkel*,
    689 A.2d 1224 (D.C. 1997)..................................................................24, 25

*Payne v. District of Columbia*,
    4 F. Supp. 3d 80 (D.D.C. 2013) ..............................................................26

*Reinaldo Robles Del Valle v. Vornado Realty Trust*,
    No. 06-1818-JAG (D.P.R. July 8, 2009)..............................................37, 42

*Romero v. National Rifle Association*,
    749 F.2d 77 (D.C. Cir. 1984) ...................................................................31

\* *Rong Yao Zhou v. Jennifer Mall Restaurant, Inc.*,
    534 A.2d 1268...............................................................................29, 30, 32

*Schering Corp. v. Home Insurance Co.*,
    712 F.2d 4 (2d Cir. 1983).........................................................................48

*Sharma v. District of Columbia*,
    791 F. Supp. 2d 207 (D.D.C. 2011) ..........................................................26

*Simpson v. Office of Human Rights*,
    597 A.2d 392 (D.C. 1991)........................................................................25

*Southland Corp. v. Griffith*,
    633 A.2d 84 (Md. 1993)............................................................................45

*Viands v. Safeway Stores, Inc.*,
    107 A.2d 118 (D.C. 1954).........................................................33

*Vila v. Inter-America Investment Corp.*,
    570 F.3d 274 (D.C. Cir. 2009) ..............................................17

\*  *Wilson v. Pena*,
    79 F.3d 154 (D.C. Cir. 1996) .........................................23, 24

## STATUTES, REGULATIONS & CODES

28 U.S.C. § 1291.....................................................................1
28 U.S.C. § 1331.....................................................................1

D.C. Act 19-350.....................................................................22
D.C. Act 19-416.....................................................................22
D.C. Act 19-338, 59 D.C. Reg. 2567....................................21
D.C. Code § 16-2701 ...........................................................1, 20
D.C. Code § 16-2702 ...........................................................20
D.C. Code § 25-781 .......................................................31, 32, 33
D.C. Code § 25-781(b) ........................................................28
D.C. Resolution 19-405, 59 D.C. Reg. 2410 ......................20

## RULES

Fed. R. Civ. P. 12(b)(6) .............................................1, 2, 20, 39, 30
Fed. R. Civ. P. 56(a) ...........................................................17

## MISCELLANEOUS

51 Am. Jur., *Limitation of Actions*, § 52............................23
51 Am. Jur., *Limitation of Actions*, § 76............................25
54 Corpus Juris Secundum, *Limitations of Actions*, §17............23
Restatement (Second) of Torts § 283 .................................44
*Singer & Singer, Statutes and Statutory Construction [Sutherland]*,
    § 41.4, (7th ed. 2009) ......................................................26

## GLOSSARY OF ABBREVIATIONS

DCWPA - D.C. Whistleblower Protection Act

IAPSC -  International Association of Professional Security Consultants

## JURISDICTIONAL STATEMENT

The District Court had jurisdiction under 28 U.S.C. § 1331. This Court has jurisdiction under 28 U.S.C. § 1291 because this appeal is from a final judgment. The District Court issued an order on September 30, 2016, granting McDonald's Corporation and Kyung Rhee's motions for summary Judgment, which disposed of all parties' claims. The notice of appeal was timely filed on October 19, 2016.

## STATUTES

The pertinent statutes are reprinted in the Addendum.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

**Defendants' Motions to Dismiss and Plaintiffs' Motion for Reconsideration**

1.    The statute of limitations for claims brought under the District of Columbia wrongful death statute (D.C. Code § 16-2701) was two years when Plaintiffs filed this lawsuit. Did the District Court err in applying a one-year statute of limitations to dismiss Plaintiffs' wrongful death claims?

2.    The District Court dismissed Plaintiffs' dram shop action on a motion to dismiss filed under Fed. R. Civ. P. 12(b)(6) by holding that Patrick Casey's death "was caused by the intentional—and unforeseeable—torts of third parties, any connection to the alleged negligence on the part of the bar defendants is too attenuated to support a valid cause of action." Did the District Court err by

1

deciding the proximate cause of Patrick Casey's death on a Rule 12(b)(6) motion to dismiss?

3.    Did the District Court err in holding that intentional torts do not apply to dram shop claims?

**The District Court's Failure to Rule on Plaintiffs' Motion to Compel**

4.    Plaintiffs moved to compel the production of documents relating to the number of corporate-owned McDonald's restaurants in the Baltimore-Washington Region that had security guards in September 2011, which was relevant to the standard of care.  Did the District Court err in failing to rule on Plaintiffs' motion to compel, which had been pending for over one year, prior to ruling on summary judgment?

**Kyung Rhee's Motion for Summary Judgment**

5.    Plaintiffs' security expert set forth the national standard of care for establishments like Rhee's McDonald's and opined that Rhee's McDonald's violated a national standard of care by failing to hire a security guard. Plaintiffs' security expert further opined that the standard of care required that Rhee's McDonald's call the police before and during the attack on Patrick Casey.  Did the District Court err in finding that Plaintiffs did not articulate a standard of care?

6.    Plaintiffs presented evidence that Rhee's McDonald's provided no training to its employees and did not have adequate policies to supervise its

employees.   Plaintiffs' security expert opined that the failure by McDonald's to adequately train and supervise its employees was the cause of the attack on Patrick Casey.   Did the District Court err in finding that there were no genuine issues as to material facts with respect to whether Rhee's McDonald's negligently failed to train its employees and/or negligently failed to supervise its employees?

**McDonald's Corporation's Motion for Summary Judgment**

7.    McDonald's Corporation requires its restaurants to adopt the "McDonald's System" which is a set of mandatory standards and policies that includes a Security Manual.   Failure to adhere to the McDonald's System can result in revocation of the franchise.   McDonald's Corporation also has a regional security manager who oversees the security of its franchises.   Did the District Court err in holding that McDonald's Corporation has no duty to its customers to ensure that Rhee's McDonald's has adequate security policies and practices?

## STATEMENT OF THE CASE

### I.    Background on Patrick Casey

Patrick Casey saved countless lives as a soldier in the United States Army, fighting in Afghanistan.   J.A. 584-85.   While serving in Afghanistan, he became an expert protecting his fellow soldiers and Afghani citizens from the improvised explosive devices littered throughout the country.   *Id*. Patrick joined the Army a few years after graduating from Rensselaer Polytechnic Institute with a degree in

management and engineering, where he was also a celebrated football player. J.A. 812-13.  Patrick gave up a lucrative career state-side to serve his Country as an infantryman in the Army, where he learned to speak Arabic and Pashtu. J.A. 821. After concluding a tour of duty in Afghanistan and receiving an honorable discharge, Patrick took the advice of foreign news correspondent Richard Engel, for whom he had provided a security detail, and enrolled in the International Affairs Master's program at the George Washington University in August 2011. J.A. 586-87; J.A. 815, 821. Within weeks of arriving in Washington, D.C., Patrick interviewed with the FBI and met with officials from the CIA to discuss future employment. *Id.*

Only a few weeks into his first semester at the George Washington University Master's program, Patrick Casey was attacked at Rhee's McDonald's. He died on September 27, 2011 at the age of 33.

## II.    Patrick's Assailants Were Overserved with Alcohol

Prior to arriving at Rhee's McDonald's, located at 1916 M Street NW in Washington, D.C., in the early morning of September 23, 2011, Jason Ward had spent the evening drinking at several bars nearby Rhee's McDonald's with his friends Brian Giblin and Justin Ruark (collectively "Assailants").

### A.    Dram Shop Allegations in the Amended Complaint

On the evening of September 22, 2011, and into the early morning hours of

4

September 23, 2011, the Assailants had been "bar hopping" at Sign of the Whale, Mighty Pint, Rumors, Ozio and Camelot. J.A. 34-37.  Prior to arriving at Ozio at approximately 1:58 a.m., the Assailants were "drunk" and "out of control."  *Id.* The Assailants consumed an excessive amount of alcohol served to them by each of the Bar Defendants, after they were visibly intoxicated, in violation of District of Columbia law.  *Id.*

At approximately 2:21 a.m. on September 23, 2011, very shortly after their "bar-hopping" ended at the establishments owned by the Bar Defendants, and having been witnessed "drunk," "intoxicated," and "out of control," the Assailants arrived at Rhee's McDonald's, which is located within one block of the Bar Defendants. J.A. 37. At Rhee's McDonald's, the Assailants continued to exhibit their visible drunkenness, engaging in rowdy, aggressive and highly inappropriate behavior.  J.A. 37-38.

### B.    Dram Shop Evidence Obtained in Discovery After the Bar Defendants' Dismissal

The Assailants went to at least eight bars that night, prior to arriving at Rhee's McDonald's. J.A. 545-548. Ward ordered ***22 beers*** at the first bar he went to. J.A. 591-594. Ward ordered five shots of gin at Public Bar. J.A. 593-594. At Camelot, the last bar where Assailants drank immediately before arriving at Rhee's McDonald's, Ward and Giblin collectively spent $211.95. *Compare* J.A. 595-599; *with* J.A. 852. The alcoholic "3 Royal Flushes" purchased at Camelot just before

going to McDonald's were for Ward or Ruark.  *Compare* J.A. 595-599; *with* J.A. 827-28. The drinks were purchased at Camelot at 1:38 a.m. Ruark testified that he was intoxicated enough that he "wouldn't have been comfortable driving." J.A. 287; J.A. 546. Ward and Giblin consumed at least as much alcohol as Ruark. J.A. 546

## III.    Patrick Casey is Attacked and Killed at Rhee's McDonald's

At approximately 2:15 a.m. on September 23, 2011, the Assailants arrived at Rhee's McDonald's. *See* J.A. 521 (2:15).[1]  When they arrived, Rhee's McDonald's was crowded and loud. J.A. 853, 899. It was a very busy night and "everyone in that McDonald's that night more likely than not was intoxicated." J.A. 898; J.A. 915-16.

### A.    The Assailants were "Belligerent" and "Wrestling" in Rhee's McDonald's Prior to the Attack

A customer in Rhee's McDonald's noticed the Assailants immediately, describing them as "***being loud and drunk at the McDonald's***." J.A. 526. (emphasis added). The intoxicated Assailants "***were belligerent while waiting in line, and were looking for a fight***." *Id.* (emphasis added).

While waiting in line to order, the Assailants attempted to grope a woman

---

[1]    Given the duration of the surveillance video, citations to the timestamp of the video are included in parentheses. The timestamp on the surveillance video is one hour earlier than the actual times of the incident. Accordingly, all citations to the timestamp will add one hour to reflect the correct time.

6

waiting in line. J.A. 521 (2:26:04). Shortly after the attempted grope of the woman, two of the Assailants wrestled with one another for 94 seconds.  J.A. 521 (2:27:05-2:28:39). One of the Assailants was concerned that the Assailants' behavior may "get [the Assailants] in trouble or get [them] kicked out of the McDonald's." J.A. 864. But the employees at Rhee's McDonald's never intervened or asked the Assailants to cease their brutish, harassing behavior.  J.A. 546.

Patrick Casey arrived at Rhee's McDonald's at approximately 2:23 a.m. *See* J.A. 521 (2:23). After arriving, Patrick sat down at a table near the front of Rhee's McDonald's with his friends, Claire Jun and David Lindsey. J.A. 880-81.

While Patrick and his friends sat at their table "minding [their] own business," two of the Assailants began harassing Patrick and his friends. J.A. 883-84; J.A. 867-68.  Patrick "tr[ied] to make a joke about it," but after approximately three to five minutes of the harassment, Patrick walked over to the Assailants' table. J.A. 884-85; J.A. 867-68; *see also* J.A. 894-95.  The Assailants continued their "trash talking" as Patrick tried to de-escalate the situation. J.A. 869-870. Patrick's friend, Lindsey, exchanged words with the Assailants, which he quickly regretted, and Lindsey tried to leave Rhee's McDonald's to avoid further confrontation. J.A. 886-87.

At this point, the Shift Manager at Rhee's McDonald's heard the "yelling and screaming" and "it was clear from the yelling there was to be a physical fight."

7

J.A. 533-34.  The Shift Manager went to the bathroom to avoid the conflict, but stated that had a security guard been present, the fight would have been avoided. *Id*.  Two other witnesses agreed that a security guard would have prevented the altercation that was about to ensue.  J.A. 900; J.A. 613.

One of the Assailants chased Patrick's friend, Lindsey, to the door of Rhee's McDonald's, violently grabbing him to prevent Lindsey's escape.    J.A. 521 (2:42:45); J.A. 887-89.  Lindsey began yelling and screaming that he and Patrick were "getting out of here." J.A. 891.  A customer of Rhee's McDonald's (now a lawyer) heard the yelling and observed two of the Assailants surround Patrick. J.A. 527.  The third Assailant recognized that the verbal altercation was getting out-of-hand, but he could not physically restrain his drunk comrades. J.A. 872-873.

The other two Assailants pushed Patrick through the door of Rhee's McDonald's. J.A. 527.  A customer attempted to intervene to prevent the attack. *Id.* But while Patrick was grappling with one Assailant "right in front of the door…still under the [McDonald's] awning by the doors," another Assailant sucker-punched Patrick.  J.A. 527; J.A. 854-55; J.A. 600-01.  According to the customer, "Patrick Casey did not see the punch coming." J.A. 527. Patrick "fell backwards onto the sidewalk." *Id.* The Assailants "looked at Patrick Casey on the ground…then immediately sprinted up the street away from the McDonalds." *Id.* Patrick's friend, Lindsey, dialed 911.  J.A. 882. The paramedics arrived **73 seconds**

after the call to take Patrick to George Washington University Hospital. J.A. 606-08; J.A. 528. Patrick remained in a medically-induced coma for four days, before succumbing to his injuries and dying on September 27, 2011. J.A. 816, 819-20. He was 33 years old.

## IV.   Rhee's McDonald's Has a History of Violence

### A.   Customer Testimony and Video Evidence of Violence in Rhee's McDonald's

Abasiakan Ekpenyong worked near Rhee's McDonald's in 2009 and 2010. Mr. Ekpenyong would go to Rhee's McDonald's late at night approximately once per month when he got off work. J.A. 1021. During that time, Mr. Ekpenyong observed four violent fights in Rhee's McDonald's, all of which preceded the attack on Patrick Casey. J.A. 540-543.

Mr. Ekpenyong filmed the first fight in Rhee's McDonald's.[2] The video depicts a man violently "choke slamming [a] woman to the ground while the McDonald's employees were looking right at them." J.A. 1026-1027. The attack on the female customer was preceded by a "fight, a pretty big brawl." *Id.* Mr. Ekpenyong witnessed a second assault in Rhee's McDonald's in 2009 between two intoxicated male customers. J.A. 542. The third fight witnessed by Mr. Ekpenyong again involved two drunk males. J.A. 542; J.A. 1023-24. According to Mr.

---

[2]    For the convenience of the Court, all videos referenced throughout this Brief (J.A. 521-524) can be accessed at this website: http://klaprothlaw.com/casey-v-mcdonalds/ . DVDs will also be delivered to the Court.

Ekpenyong, "a McDonald's employee watch[ed] the fight nonchalantly…did not break up the fight and he did not call the police." J.A. 542. The fourth fight witnessed by Mr. Ekpenyong was a verbal altercation between an employee and a customer.  J.A. 524, 542-43.

### B.    D.C. Metropolitan Police Incident Reports Detailing Prior Crime

D.C. Metropolitan Police Department (MPD) incident reports, though an incomplete dataset of all crime occurring at Rhee's McDonald's,[3] further show the history of violence occurring at or near Rhee's McDonald's in the two years preceding Patrick Casey's death.  *See* J.A. 642-809.  MPD incident reports show that the six months prior to the assault on Patrick, there were three "assault[s] with a dangerous weapon" and "with significant injuries" in or near Rhee's McDonald's.  *Id.*  There were five other violent assaults occurring in the immediate vicinity of Rhee's McDonald's, including one victim with a broken jaw. *Id*.  A table summarizing the MPD reports is included as part of the Addendum.

### C.    Testimony by McDonald's Staff of Violence in Rhee's McDonald's

The employees of Rhee's McDonald's were aware of the fights and violence that occurred at the Restaurant.  The Shift Manager present during the attack on

---

[3]    The altercations described by Mr. Ekpenyong are not accounted for in the police reports, which demonstrates that McDonalds does not call the police when there is a fight on the premises.  Specifically, there is no police report accounting for the attack on the female shown in the video at J.A. 522, or for the three other incidents he described.

Patrick Casey stated he was "aware of fights and violent attacks that occurred in [Rhee's McDonald's] prior to the killing of the customer, Patrick Casey, in September 2011." J.A. 535.

An employee of Rhee's McDonald's testified that she observed physical altercations at Rhee's McDonald's "***once a month***" since she had been working there. J.A. 919. Another employee testified that there were incidents involving "crazy people coming" in the Restaurant requiring calls to the police. J.A. 924-25. When asked how many times per week this occurred, the employee testified "[o]h, all the time." J.A. 925.[4]

## V.    Rhee's McDonald's Specifically Caters to Intoxicated Patrons

Rhee's McDonald's is open for 24-hours on Thursday, Friday, and Saturday because, as the owner testified: "there is [sic] a lot of bars in the neighborhood," and there are "extra customer [sic] coming into the store" at those times. J.A. 969-70. Despite the influx of intoxicated patrons on those nights, "there are less employees. And there are more customers." J.A. 907-908; *see also* J.A. 922.

---

[4]    The violence in Rhee's McDonald's has continued. On October 25, 2014, a violent brawl broke out in Rhee's McDonald's near the doors. J.A. 524. On October 26, 2014, a fight at Rhee's McDonald's spilled outside and a patron was punched in the face under the awning of Rhee's McDonald's. J.A. 609-611. Again, there was no security, the employees did not intervene to help avoid the fight, and did not call the police. *Id.*

## VI.    Rhee's McDonald's Failure to Implement Security Measures in Response to the Violence

Despite Rhee's claim that "security is a top priority" and that he "should do everything [he] can to provide for a safe and secure environment," Rhee's McDonald's has implemented no security measures. J.A. 952-53.

### A.    Rhee's McDonald's Utilizes McDonald's Corporation's Safety and Security Manual

The McDonald's Corporation Safety and Security Manual ("Security Manual") is the security policy for Rhee's McDonald's. J.A. 951. The Security Manual, however, is not provided to employees, there is no requirement that the Security Manual be read or understood by employees, and there was no training provided to employees that would allow them to implement and follow the security measures required by the Security Manual. J.A. 910; J.A. 923.  The reason why the employees are unaware of the security policies is because Rhee only goes to Rhee's McDonald's "about twice a month" even though, as a franchisee, he is required to "work full-time at [his] McDonalds." J.A. 104; J.A. 957. One of Rhee's employees did not even know that Rhee was the owner. J.A. 906.

The management team for Rhee's McDonald's testified as to the standard security protocols required for handling disruptive or intoxicated customers, such as the Assailants. Rhee's McDonald's Manager testified that employees are trained that if a customer is "talking loud" or using "bad words", the McDonald's staff

12

must (1) "try to calm the person down," (2) ask the person to leave, and (3) "if they won't leave, [then] call the police." J.A. 928. The Area Supervisor for Rhee's McDonald's, testified that if a person is intoxicated, the shift manager must "ask them to leave. If it's not [sic], call 911." J.A. 464. Rhee added if customers are "wrestling," the staff must call the police. J.A. 956. And "if [there is] a fight, we ask them to leave the store." J.A. 954-55.

Despite the Owner, the Area Supervisor, and the Manager of Rhee's McDonald's all testifying to uniform, standard security measures for Rhee's McDonald's, those standards were never conveyed to the employees. For example, the Shift Manager working the night Patrick Case was killed stated, "McDonald's security *policy was to do nothing*." J.A. 533. (emphasis added). "[E]mployees were instructed to never break up a fight, never touch a customer, and never remove a customer from the restaurant." *Id.* When an assault occurs in Rhee's McDonald's, the Manager testified, "we don't get involved in that. That's the rule." *Id.* Similarly, an employee testified that if there is a fight in Rhee's McDonald's, the policy is to *not* ask the customer to leave the store. J.A. 911-12.

The only security measure that the employees were aware of from the purported standard security measures, was to call 911 if there was (1) yelling, (2) a fight, or (3) an intoxicated patron. J.A. 924; J.A. 956; J.A. 464. All three conditions were present on the night of Patrick's death, but no employee called 911.

13

## B.    Nearby McDonald's Restaurants Have Armed Security Guards

The McDonald's located at 1944 14th Street ("14th St. McDonald's") and 601 F Street ("Verizon Center McDonald's"), neither of which is owned by Rhee, have armed security guards. J.A. 1008-1010.   Those McDonald's restaurants hired security guards based on a recommendation from McDonald's Corporation and its security consultant.  *Id.* The 14th St. and Verizon Center McDonald's also consulted with "neighboring businesses" in its decision to hire security guards. J.A. 1010. Based on those consultations, "in order to have a safe environment for the customers, the decision was to get some security." J.A. 1008-1009.

The 14th St. and Verizon Center McDonald's recognize the need to hire security guards "to keep everybody safe… they are the ones to control the situation." J.A. 1011-12. But more specifically, the security guards are there to keep watch over the restaurant. J.A. 1014. "If there is a case with a physical fight, they will separate them and they will take them out of the restaurant and escort the same way out of the restaurant." J.A. 1013.  Especially once the nearby bars close, it gets "more rowdy than anything else." J.A. 1015. "As soon as they close the clubs, the flow comes in the restaurant." J.A. 1016.  During those times, "there's a greater need to have a security guard" because of the volume and most patrons are most likely intoxicated. *Id.*

14

The 14th St. and Verizon Center McDonald's have been successful in "keep[ing] everybody safe" and creating "a safe environment" for their customers by hiring security guards. J.A. 1011. The corporate designee for those McDonald's restaurants is unaware of a single fight occurring in either of those restaurants since they opened in 2003. J.A. 1017-18.

Rhee's McDonald's, on the other hand, has had numerous, documented instances of violence, but Rhee sees no need to hire a security guard because he claims to not believe that fights occur in Rhee's McDonald's. J.A. 959-61.

## VII.  Relationship Between Rhee's McDonald's and McDonald's Corporation

Rhee's McDonald's is a franchisee of McDonald's Corporation. J.A. 103. The Franchise Agreement requires franchisees, such as the owner of Rhee's McDonald's, to strictly adhere to the "McDonald's System." *Id.* The Franchise Agreements requires "adherence…to standards and policies of McDonald's providing for the uniform operation of all McDonald's restaurants…" *Id.* To ensure such uniformity, McDonald's Corporation provides each franchisee with "business manuals," which the franchisee must "adopt and use exclusively the formulas, methods, and policies contained in the business manuals." *Id.* One of those business manuals is the McDonald's Security Manual. J.A. 999-1000.

To ensure compliance with the McDonald's System, McDonald's Corporation performs audits of its franchisees, which includes questions related to

15

security. J.A. 997-98. Additionally, McDonald's Corporation provides security "consultations" for franchise owned restaurants, as was the case for the 14th St and Verizon Center McDonald's. J.A. 976; J.A. 1009.

Consistent with McDonald's Corporation's oversight, control and responsibility for the conduct of its franchises, after a customer was attacked in a Baltimore franchise. McDonald's published a twitter message on April 23, 2011, stating "there's no room for violence under the Golden Arches & our thoughts are with the victim. Action has been taken." J.A. 602-605.

In the case of Rhee's McDonald's, the Regional Security Manager for the Baltimore-Washington Region for McDonald's Corporation had no communications with Rhee regarding security in Rhee's McDonald's. J.A. 986. In fact, the Regional Security Manager did not even learn that Patrick Casey had been killed in Rhee's McDonald's until three days before his deposition—nearly 3 1/2 years after Patrick had been killed. J.A. 988. Instead, the only communication from McDonald's Corporation to Rhee's McDonald's after Patrick was killed was a command to contact McDonald's media hotline regarding press inquiries. J.A. 948.

## VIII.  Procedural History

On September 23, 2013, Plaintiffs filed this lawsuit asserting wrongful death and survival claims against the Bar Defendants, Rhee's McDonalds, and McDonalds Corporation.  J.A. 8. On September 5, 2014, the District Court dismissed Plaintiffs' wrongful death claims against all Defendants on a motion to dismiss. In that same order, the District Court dismissed Plaintiffs' dram shop claims against the Bar Defendants. J.A. 68-85. On September 30, 2016, the District Court dismissed Rhee's McDonalds and McDonalds Corporation on their motions for summary judgment. J.A. 1043-1070.

## STANDARD OF REVIEW

The Circuit Court reviews the District Court's decision on Defendants' motions to dismiss *de novo. Vila v. Inter-Am. Inv. Corp.*, F.3d 274, 278 (D.C. Cir. 2009).  In reviewing the granting of the motion to dismiss, the Court takes "the allegations of the complaint as true." *Id.*

Similarly, the Circuit Court reviews "the district court's grant of summary judgment *de novo*." *Novak v. Capital Mgmt. & Dev. Corp.,* 452 F.3d 902, 906 (D.C. Cir. 2006) (hereinafter "*Novak I*"). Summary judgment is only proper if "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On summary judgment, a court

"must view the evidence in the light most favorable to the nonmoving party, and draw all reasonable inferences in that party's favor." *Novak I*, 452 F. 3d. at 906.

## SUMMARY OF ARGUMENT

The District Court erred in dismissing Plaintiffs' wrongful death claims against all Defendants by misapplying a one-year statute of limitations to Plaintiffs' wrongful death claims. J.A. 68-85. Patrick Casey died on September 27, 2012. On March 30, 2012, the D.C. Council enlarged the one-year statute of limitation to two years, thereby enlarging the time-period for the Plaintiffs to pursue their wrongful death claims. Plaintiffs benefited from this enlarged two-year limitations period because their claims never expired and also because the new limitations period, a procedural amendment, applied retroactively to all claims; even those that had been time-barred on the date of the amendment.

In addition, the District Court erroneously dismissed Plaintiffs' dram shop claims against the Bar Defendants by holding that the Bar Defendants cannot be liable for the intentional torts committed by the intoxicated Assailants who were overserved alcohol by the Bar Defendants. In reaching this decision, the District Court ignored well-established precedent that dram shop liability applies to intentional torts. Upon reconsideration, the District Court retreated from its prior holding and instead held unequivocally that the Bar Defendants' overserving of alcohol to the Assailants was not the proximate cause of Patrick's death. J.A. 99.

This too warrants reversal because not only did the court err by failing to view the allegations in the light most favorable to the Plaintiff, but the issue of proximate causation is for a jury to decide at trial, not for the court on a motion to dismiss.

Further, the District Court granted summary judgment dismissing Plaintiffs' negligence claims against Rhee's McDonalds finding that Plaintiffs' security expert "did not articulate a standard of care with specificity." J.A. 1053. This requires reversal because Plaintiffs established that the standard of care owed to Patrick Casey required that Rhee's McDonald's: (1) employ a security guard and (2) to call 911 when it became clear that a fight would occur. In dismissing Plaintiffs' claims, the District Court: (1) made zero references to the widely-accepted Forensic Methodology utilized by Plaintiffs' security expert, (2) ignored factual evidence showing that comparable restaurants employed security guards consistent with the national standard of care, and (3) incorrectly held that expert testimony was required to show that the standard of care required Rhee's McDonalds to call 911 during the altercation. Similarly, reversal is required because the District Court granted summary judgment prior to ruling on Plaintiffs' motion to compel that sought discovery relating to the standard of care, which had been pending for over a year.

Additionally, the District Court erred by dismissing Plaintiffs' negligent training and supervision claims against Rhee's McDonalds on the basis that there

was no evidence that Rhee knew his staff was incompetent. Reversal is required because the District Court did not consider the significant, undisputed evidence that the staff at Rhee's McDonalds received no training on security and Rhee provided no supervision over the staff or management.

Finally, the District Court erroneously granted McDonalds Corporation's motion for summary judgment by finding that McDonald's Corporation owed no legal duty to Patrick Casey. Reversal is warranted because McDonalds Corporation undertook and assumed such a duty through its franchise agreement, its Security Manual and its regional security manager.

## ARGUMENT

### I.    Plaintiffs Filed their Lawsuit Within the Two-Year Statute of Limitations Under the Wrongful Death Act

Plaintiffs' claims under D.C. Code § 16-2701 (hereinafter the "Wrongful Death Act") for the wrongful death of their son, Patrick Casey, were dismissed as untimely under Fed. R. Civ. P. 12(b)(6). J.A. 41-52; J.A. 68-85. The statute of limitations under the Wrongful Death Act is two years. D.C. Code § 16-2702. Patrick Casey died on September 27, 2011. Plaintiffs filed suit on September 23, 2013, within two years of Patrick's death. J.A. 8. Nevertheless, the District Court dismissed the Plaintiffs' wrongful death claims, applying the former one-year statute of limitation to those claims, despite a change in the law on March 30, 2012, which enlarged the statute of limitations under the Wrongful Death Act from

one to two years.  The District Court erred in applying the former limitations period to dismiss Plaintiffs' claims under the Wrongful Death Act.

### A.    Overview of the Wrongful Death Act of 2012

On March 30, 2012, the D.C. Council passed "emergency" legislation repealing the one-year statute of limitations for wrongful death suits, and replacing it with a two-year statute of limitations.  Wrongful Death Emergency Act, D.C. Act 19-338, 59 D.C. Reg. 2567. J.A. 86-88. Prior to passing the emergency legislation, on March 20, 2012, the Council passed the Wrongful Death Emergency Declaration Resolution.  D.C. Resolution 19-405, 59 D.C. Reg. 2410. J.A. 92-93. In the Resolution, the Council stated there "exists an immediate need to amend" the wrongful death statute of limitations to two years because, *inter ali*a, there were two deadly shootings on March 22, and 30, 2010, and the Council stated that, due to the one-year statute of limitations: "families of the victims…will be barred, however, from bringing their claims because the one-year time limit has expired." *Id*.  The Council found that one year was insufficient time to investigate a claim, locate and obtain legal representation, "[t]herefore, it is imperative that the statute of limitations for filing wrongful death suits be extended to 2 years."  *Id*.

The South Capitol Street shootings with which the Council was specifically concerned involved claims that ***had already expired*** under the Wrongful Death Act (Plaintiffs' claim here never expired). To revive those expired claims, the Council

21

enlarged the statute of limitation to two years on the two-year anniversary of the deaths of those victims. At the same time as passing the emergency legislation, the D.C. Council also approved the Wrongful Death Temporary Act of 2012—a stop-gap measure until permanent legislation was passed. *See* D.C. Act 19-350. The emergency and temporary legislation were made permanent by the "Wrongful Death Act of 2012" which was signed into law on July 25, 2012, and after the Congressional review period, went into effect on October 22, 2012. Wrongful Death Act of 2012, D.C. Act 19-416. J.A. 89-90

Thus, as a result of the emergency and temporary legislation, since ***March 30, 2012***, the statute of limitations under the Wrongful Death Act has been two years. At no time prior to the passage of the 2012 wrongful death legislation did Plaintiffs' claims under the Wrongful Death Act expire. As such, this case does not entail the revival of a stale, expired claim as the District Court found.

### B.    Plaintiffs' Wrongful Death Claims Had Not Yet Expired When the Wrongful Death Act of 2012 was Enacted

The District Court dismissed Plaintiffs' wrongful death claims on the basis "the two-year statute of limitations contained in the Wrongful Death Act of 2012 is only applied prospectively, and plaintiffs' wrongful death claims are therefore governed by the one-year statute of limitation in effect at the time of Patrick' Casey's death." J.A. 79. Contrary to the District Court's ruling, "A statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct

22

antedating the statute's enactment." *Landgraf v. USI Film Products*, 511 U.S. 244, 269 (1994).   In other words, the fact that Plaintiffs' wrongful death claims may have accrued prior to enactment of the Wrongful Death Act of 2012 has no bearing on whether the Act should be applied here.  Indeed, "[w]hen the intervening statute authorizes or affects the propriety of ***prospective relief***, application of the new provision is not retroactive."  *Id.* at 273 (emphasis added).

This Circuit has adhered to this rationale in holding that where, as here, a new statute of limitations expands the time to bring a lawsuit, the new statute of limitations is considered to apply prospectively to those claims not yet expired. *See Wilson v. Pena*, 79 F.3d 154, 160-162 (D.C. Cir. 1996).[5]  In *Wilson*, this Circuit addressed whether an expansion of the statute of limitations arising under Title VII of the Civil Rights Act would apply to claims that had been pending (but not yet expired) at the time of the enactment of the new limitations period.  *Id.*   This Court held, "***although the events underlying [the plaintiff's] complaint predate the 1991 amendment, application of the 90-day period to [plaintiff's] case would not be***

---

[5]     This holding is in accordance with accepted canons of statutory construction. *See* 51 Am. Jur., *Limitation of Actions*, §52 ("If a cause of action has not become time barred as of the effective date of the extension of limitation period, a party may take advantage of the additional time provided within which to file suit."); *see also* 54 Corpus Juris Secundum, *Limitations of Actions*, §17 ("a statute which enlarges a statutory limitations period is not retrospective and will apply only to matters that are not already barred by the original limitations period at the time the statute goes into effect.").

*retroactive*." *Id.* at 162 (emphasis added). This Court reasoned that the new limitations period would apply prospectively to the plaintiff's claims, because "[b]y applying the 90-day period to [the plaintiff's] claim, we do not 'attach[] new legal consequences to events completed before [the] enactment' of the Civil Rights Act of 1991… it attaches legal consequences only to actions taken after the effective date of the amendment, namely to [plaintiff]'s filing or failing to file suit within a certain number of days." *Id.*

That is the case here. Plaintiffs' facts can be inserted into the holding in *Wilson* and yield the same outcome: "although the events underlying [Plaintiffs'] complaint predate the [2012 Wrongful Death Act] amendment, application of the [two-year] period to [Plaintiffs'] case would not be retroactive." *Id.* Thus, under *Wilson*, application of the new two-year statute of limitations to Plaintiffs' claim is prospective, not retroactive as the District Court wrongly concluded. Plaintiffs' wrongful death claims had not expired at the time of the amendment and are therefore not time-barred.

This result is also consistent with the established law in the District of Columbia whereby the longer limitations period will always be applied in cases where two limitations periods are possible. *Owens-Corning Fiberglas Corp. v. Henkel*, 689 A.2d 1224, 1233 (D.C. 1997) ("where two constructions as to the limitations period are possible, the courts prefer the one which gives the longer

period in which to prosecute the action.... If there is any reasonable doubt in a statute of limitations problem, the court will resolve the question in favor of the complaint standing and against the challenge.") (citing *Simpson v. District of Columbia Office of Human Rights*, 597 A.2d 392, 401 (D.C. 1991). Applying the longer of the possible statutes of limitations is consistent with the "strong public policy that litigation be disposed of on the merits whenever possible." [6] *Henkel*, 689 A.2d at 1233. Pursuant to *Henkel*, any doubt as to whether the current two-year statute of limitations applies to Plaintiffs' claims, must be resolved in favor of applying the longer two-year limitations period. *Id.*

Clear and controlling precedent and generally accepted principles of statutory interpretation require reversal of the District Court's decision to apply the former one-year statute of limitations to Plaintiffs' wrongful death claims.

## C. The Wrongful Death Act of 2012 Applies Retroactively Because it is a Procedural Change in Law

This Court need not address the issue of retroactivity of the Wrongful Death Act of 2012 because Plaintiffs' wrongful death claims had not expired at the time the Act expanded the limitations period (*see supra*). But even if retroactivity were a relevant inquiry (it is not), the District Court also erred by failing to consider that

---

[6]    In applying the longer statute of limitations, the District of Columbia follows the majority rule. *See* 51 Am. Jur. *Limitation of Actions*, §76 ("Any doubt as to the application of two or more statute of limitation to a claim should be resolved in favor of the longest limitation period.").

it must apply the procedural rule in effect at the time it renders its decision, regardless of when the underlying events occurred. *See Landgraf*, 511 U.S. at 275; *Bradley v. School Bd. of Richmond*, 416 U.S. 696, 711(1974); *see also Singer & Singer, Statutes and Statutory Construction [Sutherland],* § 41.4, at 434-35 (7th ed. 2009) ("Courts presume that procedural statutes apply retroactively").    Because the Wrongful Death Act of 2012, which extends the statute of limitations, is a procedural change in law it is also retroactive.  *See Lindh v. Murphy*, 521 U.S. 320, 327 (1997) (statutory changes to laws "setting deadlines for filing" are "procedural in a strict sense" and that "the natural expectation would be that it would apply to pending cases.").

Similarly, it is well-established in the District of Columbia that statutes of limitations are procedural statutes, which apply retroactively.  *See Davis v. District of Columbia*, No. 2005-CA-8772 B, 2010 D.C. Super. LEXIS *6-7 (D.C. Super. Ct. Nov. 23, 2010) (applying the expanded three-year statute of limitations for claims under the D.C. Whistleblower Protection Act (DCWPA) to claims that accrued prior to the effective date of the amendment); *see also Sharma v. District of Columbia,* 791 F. Supp. 2d 207, 212-14 (D.D.C. 2011) (same); *see also Payne v. District of Columbia,* 4 F. Supp. 3d 80, 87 (D.D.C. 2013) (same).

The same as the expanded statute of limitations for the DCWPA, the Wrongful Death Act of 2012, which enlarged the statute of limitations is a purely

procedural amendment, and therefore applies retroactively. The Wrongful Death Act of 2012 is "procedural in a strict sense" because it relates to the "setting deadlines for filing." *Lindh*, 521 U.S. at 327. As a procedural statute, the two-year statute of limitations, which was in effect at the time the Court rendered its decision, must be applied to Plaintiffs' wrongful death claims. Thus, Counts I-III of Plaintiffs' Amended Complaint must be reinstated.

### D. The Statutory Language Requires that the Two-Year Limitations Period be Applied to Plaintiffs' Wrongful Death Claims

When the enactment of a statute does impair the parties' substantive rights (the Wrongful Death Act of 2012 does not), then a court must determine whether the legislature intended the statute to apply retroactively. *Koch v. SEC*, 793 F. 3d 147, 157 (D.C. Cir. 2015) (citing to *Landgraf*, 511 U.S. at 268). Although this Court need not reach this issue to find that Plaintiffs' wrongful death claims have a two-year statute of limitation, the D.C. Council clearly intended the Wrongful Death Act of 2012 to apply retroactively.

The most fundamental canon of statutory construction is that the court's "analysis begins with 'the language of the statute.'" *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999). "Where the statutory language provides a clear answer, it ends there as well." *Id*. In the present case, the statutory language of the Wrongful Death Act of 2012 and its predecessor emergency resolution state:

1. "The Council adopts the fiscal impact statement," which states "a few

27

cases that recently passed the one year limitation could seek to pursue a wrongful death suit in the year following the passage of the bill." J.A. 89-91.

2. The purpose of the statute is to "[t]o extend the time period that a plaintiff has to bring a claim against a defendant in a wrongful death suit generally from one year to 2 years." J.A. 87.

3. "There exists an immediate need to amend the District of Columbia's statute of limitations [for a] wrongful death claim…[families of the South Capitol murders] will be barred from bringing their claims because the one-year limitation has expired… Therefore, it is imperative that the statute of limitations for filing wrongful death suits be extended to 2 years." J.A. 93.

The statutory language of the Wrongful Death Act of 2012 demonstrates that the Council intended to extend the statute of limitations from one year to two years for all wrongful death claims, even those that accrued prior to the amendment and those that had already expired, as was the case for the South Capitol Street murders cited by the Council. In fact, the Council enlarged the limitations period to two years on the two-year anniversary of the South Capitol Street Murders to revive those expired claims. Unlike those cases, Plaintiffs' claims here had not expired as of the passing of the Wrongful Death Act of 2012. Accordingly, the District Court's dismissal of Plaintiffs' wrongful death claims must be reversed.

## II.    Plaintiffs Properly Pled a Dram Shop Claim Against the Bar Defendants

In the District of Columbia, a bar is prohibited from selling alcohol to "[a]n intoxicated person, or any person who appears to be intoxicated[.]" D.C. Code § 25-781(b) (hereinafter "Dram Shop Act"). The Dram Shop Act has a "public

safety purpose, and…its unexcused violation…constitutes negligence *per se*, i.e. breach of the duty of the care that tavern keepers owe to the public." *Jarrett v. Woodward Bros.*, 751 A.2d 972, 978 (D.C. 2000) (citing *Rong Yao Zhou v. Jennifer Mall Restaurant, Inc.*, 534 A.2d 1268, 1275 (D.C. 1987)). As such, "when members of the public allege…that the tavern keeper's negligence was the legal cause of their injuries, they state a cause of action under District of Columbia law." *Jarrett*, 751 A.2d at 978. A bar's duty to abide by the Dram Shop Act extends to and for the benefit of third parties, who may encounter inebriated persons that were served alcohol by the bar in violation of the Dram Shop Act. *Marusa v. District of Columbia*, 484 F.2d 828, 834 (D.C. Cir. 1973); *Rong Yao Zhou*, 534 A.2d at 1273 (adopting the *Marusa* holding).

Despite the clear and controlling case law establishing the existence of a "dram shop" claim, especially for the intentional acts of third parties, the District Court dismissed Plaintiffs' dram shop claims under Fed. R. Civ. P. 12(b)(6) against the Bar Defendants "[b]ecause Casey's death…was caused by the intentional—and unforeseeable—torts of third parties…" J.A. 81. Upon reconsideration, the District Court retreated from its prior ruling and instead decided that the Bar Defendants' overserving of alcohol to the Assailants was not the proximate cause of Patrick's death. J.A. 99. As shown below, the District Court's decision must be reversed because it: (1) erroneously held that a bar owner cannot, as a matter of law, be held

liable for the intentional torts of a customer it overserved and (2) improperly decided proximate cause on a motion to dismiss under Rule 12(b)(6).

### A.     Dram Shop Violations Apply to Intentional Torts

The District Court ignored the controlling law that drinking establishments may be held liable for damages caused by the intentional torts of an intoxicated person whom was served alcohol while intoxicated. *Marusa v. District of Columbia,* 484 F.2d 828 (D.C. Cir. 1973) (tavern owner liable for serving an intoxicated individual who committed an assault). The D.C. Court of Appeals also follows the *Marusa* decision. *See Rong Yao Zhou*, 534 A.2d at 1273.

In addition to being controlling authority, *Marusa* is factually analogous to this case. In *Marusa*, an off-duty police officer was served alcohol by the defendant bar while he was intoxicated. *Marusa,* 484 F.2d at 830. After leaving the defendant bar intoxicated, the police officer shot the plaintiff. *Id.* This Circuit found that the bar owed a duty of care to individuals who, like Patrick Casey, encounter intoxicated persons that were served alcohol by the bar in violation of the Dram Shop Act. *Id.* at 833-835.

Importantly, *Marusa* explicitly rejected the notion that a drinking establishment's liability under the Dram Shop Act should be treated differently when the intoxicated patron committed an intentional act. *Id.* at 835; *see also Rong Yao Zhou*, 534 A.2d at 1272, 1273. The *Marusa* Court found if the

negligence/intentional tort "distinction is relevant at all, it goes to the jury question of the foreseeability of [the plaintiff's] injury." *Marusa*, 484 F.2d at 835. *Marusa* continues to be the law in the District of Columbia. *See Romero v. Nat'l Rifle Asso.*, 749 F.2d 77, 83 (D.C. Cir. 1984) (holding dram shop act "support[s] liability for the criminal acts of third persons…third-party criminal conduct was the 'the very injury…which the statute intended to prevent.'"). Accordingly, the District Court's ruling that the Bar Defendant's liability for violating the Dram Shop Act was "unforeseeable" as a matter of law because Patrick Casey's death was caused by the assailant's intentional torts is contradicted by the well-established precedent in *Marusa*.

Thus, Counts II and IV of the Amended Complaint must be reinstated.

### B.    The Court Erred in Deciding the Jury Question of Proximate Cause on a Motion to Dismiss

The District Court further erred by finding that the "negligence of the bar defendants is too attenuated to support a valid cause of action," because Patrick Casey's death "was caused by the intentional—and unforeseeable—torts of third parties."[7]    J.A. 81.    In short, the District Court decided proximate cause on a

---

[7]    The District Court also erroneously held that there is a "heightened foreseeability" element that must be proven under a claim brought under the Dram Shop Act. J.A. 81. This "heightened foreseeability" standard is found nowhere in the law for dram shop claims. Instead, the legal duty for a negligence per se dram shop claim is created by D.C. Code § 25-781. The violation of the statute is per se negligence.

motion to dismiss, without even having the benefit of discovery. JA. 99-100.

It is well-settled by the D.C. Court of Appeals that the issue of proximate causation for a dram shop violation is a question for the jury at trial. *Jarrett*, 751 A.2d at 987 n.25 ("With respect to proximate causation, the time, location and circumstances…is for the jury."); *see also Marusa,* 484 F.2d at 835 (holding that any distinction between negligent and intentional conduct, if at all relevant, "goes to the ***jury question*** of the foreseeability of [the plaintiff's] injury.") (emphasis added); *see also Rong Yao Zhou*, 534 A.2d at 1277 (holding that proximate cause for a dram shop action is a jury question); *see also Majeska v. District of Columbia*, 812 A.2d 948, 950 (D.C. 2002) (questions of proximate cause have generally been reserved for the jury.).

Here, Plaintiffs pled that the Bar Defendants violated D.C. Code § 25-781 and that violation was the proximate cause of Patrick Casey's death. J.A. 34-48. The Amended Complaint specifically alleges[8] that the Assailants had been bar-hopping at eight nearby bars, all located within one block of Rhee's McDonald's. J.A. 34-37. At those bars, Assailants drank to intoxication, yet continued to be served with massive amounts of alcohol by the Bar Defendants, despite their observable levels of intoxication. *Id.* By the time the Assailants arrived at the last

---

[8]    To further underscore the premature and improper dismissal of Plaintiffs' dram shop claims is the fact that later discovery fully supported the allegations in the Amended Complaint.

of the Bar Defendants, they were already "drunk and out of control." J.A. 34-37.

Immediately after leaving the Bar Defendants intoxicated, the Assailants arrived at

Rhee's McDonald's and were observed "being loud and drunk at the

McDonald's…. [and] belligerent while waiting in line, and were looking for a

fight." J.A. 526.

These allegations are more than adequate for properly pleading a negligence

per se claim under D.C. Code § 25-781. In fact, the law establishes that the basic

allegation that the Bar Defendants violated a statutory duty owed to Patrick Casey

"is adequate at law to warrant a trial on the merits." *Marusa,* 484 F.2d at 835.

Thus, Counts II and IV of Plaintiffs' Amended Complaint must be reinstated with

respect to the Bar Defendants and the issue of proximate causation must be decided

by a jury.

## III.   Rhee's McDonald's Negligently Failed to Protect Patrick Casey From Foreseeable Crime

In the District of Columbia, it is "axiomatic" that a business owner owes a

duty to protect its patrons from foreseeable dangers on its premises. *Novak I,* 452

F.3d at 911-12. A business owner is liable to his customers "for injuries inflicted by

the acts of other patrons if the [business owner] by the exercise of reasonable care

could have known that such acts were being done or were about to be done…" *Id.*

at 912 (internal quotations and citations omitted); *see also Viands v. Safeway

Stores, Inc.*, 107 A.2d 118, 120 (D.C. 1954) (business owner "is liable if he has not

33

taken reasonable and appropriate measures to restrict the conduct of third parties of which he should have been aware and should have realized was dangerous.").  As set forth below, Rhee's McDonalds failed to take reasonable and appropriate measures to protect Patrick Casey against the known risk of violence at Rhee's McDonalds.

### A.     Rhee's McDonald's Had a "Heightened Foreseeability" of Crime

A business owner is liable to its customers for the "intervening criminal act" by a third party upon "a heightened showing of foreseeability." *Novak I*, 452 F. 3d at 912. As this Circuit recognized, "heightened foreseeability is present when there is a [1] 'special relationship' between the person injured by the crime and the defendant, and [2] prior, similar criminal acts have occurred in the area where the plaintiff was hurt." *Id.*  A "special relationship" exists between a "business invitor" and its "business invitees." *Id.*   Here, Rhee's McDonald's, a business invitor, shared a special relationship with his business invitee, Patrick Casey, and "prior similar criminal acts have occurred in the area where [Patrick Casey] was hurt." *Id*; *see District of Columbia v. Doe,* 524 A.2d 30, 33 (D.C. 1987) (heightened showing "does not require previous occurrences of the particular type of harm, but can be met instead by a combination of factors which give defendants an increased awareness of the danger of a particular criminal act").

34

In *Novak I*, this Circuit held that there was a heightened showing of foreseeability based only on the statements from the defendant bar's staff that "fights occurred in the club 'once every two weeks at least,' 'twice a month,' or 'probably 1 a month or 1 a week.'" *Novak I*, 452 F. 3d. at 913. This general description of fighting was held to be "evidence [that] certainly could put a reasonable club owner on heightened notice that a serious problem existed outside its door." *Id.*

Here, the evidence showing a "heightened foreseeability" of crime in Rhee's McDonald's far exceeds the threshold required by *Novak I* for a reasonable jury to conclude the attack on Patrick Casey was foreseeable. As in *Novak I*, one employee of Rhee's McDonald's testified that she observed physical altercations at Rhee's McDonald's "once a month" since she had been working there. J.A. 919. The Shift Manager was also "aware of fights and violent attacks that occurred in [Rhee's McDonald's] prior to the killing of the customer, Patrick Casey, in September 2011." J.A. 535. These statements alone satisfy the "heightened showing" under *Novak I.*

Nonetheless, here there is even more specific evidence of violent crime in Rhee's McDonald's than in *Novak I.* Prior to Patrick's death, Mr. Ekpenyong a regular customer of Rhee's McDonald's witnessed violent altercations at the restaurant—three of which involved violent criminal acts. J.A. 522; J.A. 540-44.

35

Mr. Ekpengyong witnessed "a pretty big brawl" at Rhee's McDonald's just prior to a woman getting violently struck in the face at Rhee's McDonald's. J.A. 522; J.A. 1027.

In addition, MPD incident reports show that in the six months prior to the assault on Patrick Casey, there were three "assault[s] with a dangerous weapon" and "with significant injuries" in or near Rhee's McDonald's.  J.A. 642-809. There were five other violent assaults occurring in the immediate vicinity of Rhee's McDonald's, including one victim with a broken jaw. *Id*.  This does not include all the other violent incidents that went unreported because the employees did not call the police when assaults occurred in Rhee's McDonald's. J.A. 963-64; J.A. 611.

Thus, given the significant history of violent fights occurring in Rhee's McDonald's, and viewing the evidence in a light most favorable to Plaintiffs, a reasonable jury could find that it was foreseeable that fights would continue absent the exercise of reasonable care by Rhee's McDonald's.

### B.    Rhee's McDonald's Breached its Duty by Failing to Hire a Security Guard

The District Court erroneously found that Plaintiffs' expert failed to articulate the requisite standard of care for a restaurant, such as Rhee's McDonald's. J.A. 1053. Not so.  As set forth below, Plaintiffs established that the standard of care owed to Patrick Casey required that Rhee's McDonald's: (1) employ a security guard at Rhee's McDonald's and (2) to call 911 when it became

clear to the McDonald's' staff that a physical altercation would occur.

In light of the significant history of violence in Rhee's McDonald's, the national standard of care required Rhee's McDonald's to hire a security guard. J.A. 558-60. "Under District of Columbia law, an expert testifying about a national standard of care must describe a specific standard rather than refer generally to safety and must show that the standard is accepted in the industry." *Novak v. Capital Mgmt. & Dev. Corp.*, 570 F.3d 305, 313 (2009) (hereinafter "*Novak II*"). "The expert must clearly articulate and reference a standard of care by which the defendant's actions can be measured." *Clark v. District of Columbia*, 708 A.2d 632, 635 (D.C. 1997) (internal quotations and citations omitted). Plaintiffs' security expert, Lance R. Foster, did just that.

Mr. Foster is a Certified Security Consultant by the International Association of Professional Security Consultants ("IAPSC"). J.A. 571-74. Mr. Foster is affiliated with a number of professional security organizations and has presented many training programs in security-related topics. *Id.* In forming his opinions, Mr. Foster utilized the widely accepted Forensic Methodology published by IAPSC, which has been accepted as a reliable methodology by this Court in *Novak II*. The IAPSC has also been accepted by other federal courts in *Doe v. AE Outfitters Retail Co.*, No. 14-508-WDQ, 2015 U.S. Dist. LEXIS 169719, at *22 (D. Md. Dec. 17, 2015); *Reinaldo Robles Del Valle v. Vornado Realty Trust*, No. 06-1818-JAG (No.

37

250) (D.P.R. July 8, 2009); and by *Childress v. Ky. Oaks Mall Co.*, No. 5:06CV-54-R, 2007 U.S. Dist. LEXIS 69881, at *12 (W.D. Ky. Sep. 20, 2007).

Mr. Foster utilized the IAPSC Forensic Methodology to articulate that "the national standard of care required Rhee's McDonald to provide adequate security measures in the form of security guards to ensure the safety of its patrons." J.A. 559. This standard of care is not pulled out of thin air. It is based on information gathered pursuant to the IAPSC Forensic Methodology, which included two site inspections of Rhee's McDonald's and neighboring McDonald's restaurants. J.A. 475-76, 504.

A national standard of care is sufficient if it "has been accepted as controlling in facilities and enterprises that are similar to defendants' facilities or enterprises." *Briggs v. Wash. Metro. Area Transit Auth.*, 481 F.3d 839, 847 (D.C. Cir. 2007). In *Novak II*¸ this Circuit held that the standard of care to station a security guard "outside" a bar was adequate where the security expert stated it was "standard practice" and the expert named other D.C. bars that followed the practice. *Novak II*, 570 F.3d at 313. Plaintiffs' expert here went well beyond the threshold required by *Novak*.

*First*, Mr. Foster identified two neighboring McDonald's restaurants that have accepted the "standard practice" of hiring security guards in their restaurants. J.A. 558-559. In particular, the 14th St. and Verizon Center McDonald's hired

security guards to ensure the safety of their customers.  J.A. 1008-09. Mr.  Foster

agreed with the efficacy of hiring security guards for those restaurants, which differ

little in both location and clientele from Rhee's McDonald's. J.A. 558-559.   In

addition to those two restaurants,[9] Mr. Foster relied upon Mr. Garrido's testimony

identifying a third Rhee's McDonald's that has on-site security guards. J.A. 1007.

Mr. Foster's reliance upon the accepted standard of care for the 14th St. and Verizon

Center McDonald's to hire security guards, consistent with the requirements of

*Novak II*, is alone sufficient to establish the national standard of care.   But, Mr.

Foster's analysis went further.

*Second*, Mr. Foster reviewed McDonald's Corporation's Security Manual to

determine what it believed was the standard of care for each of its restaurants

throughout the nation.  A standard of care is adequate if a "proffered standard has

been promulgated." *Briggs*, 481 F.3d at 847. Here, the standard of care articulated

by Mr. Foster was consistent with the standard published in McDonald's

Corporation's own Security Manual which Mr. Foster relied upon.[10] J.A. 558-60;

---

[9]      As shown below in Section IV, the Casey's moved to compel production of
documents identifying the McDonalds restaurants in the Washington-Baltimore
region that employed security guards. The District Court did not rule on this
motion, but instead dismissed the Casey's claims faulting them for only showing
two McDonalds restaurants in the Washington region that employed security
guards.  Had the District Court compelled this evidence, the Casey's would have
certainly been able to furnish to the Court the evidence it sought.

[10]      Internal manuals ***alone*** are insufficient to establish a national standard of
care, but are "admissible as bearing on the standard of care."  *Briggs*, 481 F. 3d at

J.A. 1035 ("And I agree with what McDonald's says in their recommendations to their franchises, that stores should try to use off-duty police officers.").  As noted in the Security Manual, "Because of their extensive professional training, ***off-duty police officers are highly recommended*** for armed security guards." J.A. 558 (emphasis added).  This recommendation by McDonald's Corporation to hire off-duty police officers is especially true where a restaurant, such as Rhee's McDonald's here, operates for 24 hours. J.A. 555. The Security Manual further recommends armed security guards for burglary prevention, crowd control, and robbery prevention. *Id.* at 7. The standards in the Security Manual also support the articulation of the national standard of care because these standards are mandatory for corporate-owned McDonald's nationwide. J.A. 977. In the Baltimore-Washington Region alone, there are ***105*** corporate-owned restaurants, which have necessarily adopted these security standards. J.A. 992.

*Third*, in articulating that national standard of care that required Rhee's McDonald's to hire a security guard, Mr. Foster relied upon the fact that the nearby bars, which serve the same intoxicated customers as Rhee's McDonald's, are required to have security personnel. Mr. Foster relied upon the D.C. Alcoholic

---

848.  When an expert testifies that the internal manuals embody the national standard of care (as Mr. Foster did here as well as identify comparable restaurants that have adopted the standard of care), together with Mr. Foster's analysis of the history of violent crime in this area and at the particular restaurant, coupled with the late-night, intoxicated clientele, this is sufficient to establish the national standard of care.

Beverage Control Board which unequivocally stated that there exists a causal link between alcohol and violence.   J.A. 556-557. Mr. Foster further supported his opinion by relying upon the head of security for one of the Bar Defendants, who testified it was important patrons don't get too intoxicated because "they can hurt themselves, they can hurt others, they can get out of hand, they can get belligerent…" *Id.* Notably, McDonald's own security expert admits there is a correlation between intoxicated persons and violence. J.A. 618-619. As noted by Mr. Foster in his report, the "connection between violence and intoxication does not change based on the location or the type of establishment." J.A. 557. The same risks that exist at a bar across the street with intoxicated customers (*e.g.* violence), also exists at the restaurant catering to those same intoxicated customers.   Because "intoxicated patrons increase the risk of violent activity" and Rhee's McDonald's intentionally catered to those intoxicated patrons from the nearby bars, the national standard of care required that Rhee's McDonald's (like the other area McDonald's restaurants and neighboring bars) have a security guard. J.A. 556-57.

*Fourth*, it is sufficient if an articulated standard "is generally known." *Briggs*, 481 F.3d at 847. Mr. Foster's articulated standard of care that Rhee's McDonald's was required to have a security guard was "generally known" among nearly all the customers and the staff in Rhee's McDonald's the night Patrick Casey was killed. J.A. 534; J.A. 613; J.A. 900. The repeated recognition of the

41

absence of a security guard by both the employees and customers at Rhee's McDonald's, further demonstrates that the standard of care required a security guard.

*Finally*, "reliance on professional guidelines or standards is a generally appropriate methodology for experts to use when opining on an applicable standard of care." *Girdler v. United States*, 923 F. Supp. 2d 168, 191 (D.D.C. 2013). In articulating the national standard of care, Mr. Foster rigorously applied the IAPSC Forensic Methodology to the facts of this case, as set forth in his 15-page expert report. J.A. 549-566. Sister District Courts have held that the IAPSC methodology is a reliable methodology for security experts. *See e.g. Doe*, 2015 U.S. Dist. LEXIS 169719, at *23 (D. Md. 2015) (permitting security expert to testify using IAPSC methodology); *Childress*, 2007 U.S. Dist. LEXIS 69881 at *19 ("By all indications, the IAPSC *Forensic Methodology* has been subject to peer review and accepted by security industry professionals. It is the product of a consensus reached by security practitioners who are at the top of their field."); and *Reinaldo Robles Del Valle, et al v. Vornado Realty Trust,* (06-1818-JAG) (No. 250) (D.P.R. July 8, 2009).

Mr. Foster has been Certified as a Security Consultant by the IAPSC and his methodology in articulating the standard of care here strictly adhered to the IAPSC methodology, which included travelling to the District of Columbia to perform two

site inspections of Rhee's McDonald's and the neighboring McDonalds restaurants. J.A. 475. Applying the IAPSC Forensic Methodology, which requires analysis of a location's crime history and other inherent risk factors, the national standard of care required Rhee's McDonald's to hire a security guard given its significant history of violent crime. Mr. Foster also made it clear that this standard of care applies to "**restaurants across the United States [and] all throughout, Washington, D.C**." J.A. 1036 (emphasis added).

Accordingly, the evidence is more than sufficient to establish the national standard of care that Rhee's McDonald's had a duty to hire a security guard. McDonald's breached this standard of care by refusing to protect its customers by hiring a security guard. J.A. 943. The breach of this duty was the proximate cause of Patrick Casey's death. J.A. 558-60; J.A. 1034-35; J.A. 1038. Accordingly, the District Court's dismissal of Plaintiffs' claim that Rhee's McDonald's negligently failed to hire a security guard should be reversed and remanded for trial.

### C.   Rhee's McDonald's Breached its Duty to Protect Patrick Casey by Failing to Call 911

The undisputed facts show that McDonald's failed to call 911 even after it became "clear from the yelling there was to be a physical fight." J.A. 533-34. It is also undisputed that it took the police **73 seconds** to arrive at Rhee's McDonald's after Lindsey's telephone call. J.A. 606-608. Had employees called 911 when it was clear that there would be a physical fight, based on police response time,

Patrick Casey would be alive today.

Both McDonald's Corporation and Rhee's McDonald's concede that its employees were required to call the police during the altercation.    J.A. 967-68; J.A. 979-82; J.A. 945-47.  This is also the policy of Rhee's McDonalds. J.A. 954-56; J.A. 464. Plaintiffs' expert agrees with them, yet the District Court granted summary judgment because it wrongly concluded there was no articulation of the standard of care by Plaintiffs' expert.[11] J.A. 1060. This warrants reversal because (1) expert testimony is not required to establish the duty to call the police and, (2) even it was, Plaintiffs provided expert testimony that the national standard of care required the Rhee's McDonald's to call the police.

"In the typical negligence case, the standard of care applicable to a person's conduct is simply that of a 'reasonable man under like circumstances.'" *Godfrey v. Iverson*, 559 F.3d 569, 572 (D.C. Cir. 2009) (citing to Restatement (Second) of Torts § 283).  "Ordinarily a jury can ascertain this standard without the aid of expert testimony." *Id.* Expert testimony is only required "if the subject in question is so distinctly related to some science, profession or occupation as to be beyond

---

[11]     The District Court acknowledged that a standard of care does not require expert testimony if the standard falls "within realm of common knowledge and everyday experience of the jurors." J.A. 1059-60.  Yet, the District Court erroneously concluded that merely because Plaintiff had an expert to testify regarding the standard of care that required Rhee's McDonalds to call the police, Plaintiffs therefore conceded that expert testimony was required on this issue. *Id.* Plaintiffs made no such concession.

the ken of the average layperson." *Id.* If the "standard of care is within the common knowledge and everyday experience of the jurors," then expert testimony is not required. *Id.*

Here, the standard of care requiring the Rhee's McDonalds to call the police is not a novel or scientific inquiry but instead falls well within the common knowledge and everyday experience of jurors. *Southland Corp. v. Griffith*, 633 A.2d 84 (Md. 1993) (holding that a store owner has a legal duty to call the police for invitees during an assault on a customer);[12] *see also Jones v. Kwik Karol & Ginalco, Inc.,* 490 So. 2d 664, 666 (La. Ct. App. 1986) (same); *see also Drew v. LeJay's Sportsmen's Cafe, Inc.,* 806 P.2d 301 (Wyo. 1991). Whether the standard of care required the employees of Rhee's McDonald's to call the police once they knew there would be a physical fight (unreasonable risk of physical harm to invitee) is a determination that can be made by a lay juror. And the possibility of physical harm was not a remote possibility. Once the trash-talking began, the Shift Manager knew there would be a physical fight: "[i]t was clear from the yelling there was to be a physical fight." J.A. 534. At this time, both McDonalds Corporation and Rhee's McDonald's testified that the staff were required to call the

---

[12] Courts in the District of Columbia "should look to Maryland law first…because the District of Columbia derives its common law from that state and because District of Columbia courts have in the past looked to Maryland law for guidance." *Conesco Indus., Ltd. v. Conforti & Eisele, Inc*., 627 F.2d 312, 315-16 (D.C. Cir. 1980).

police. J.A. 967-68; J.A. 981-83; J.A. 945-47. Expert testimony on this issue is not required because a jury can ascertain under the reasonable person standard whether the standard of care required the shift manager to call the police when it became clear to him that there was going to be a physical fight.

Nonetheless, this minimal duty to call the police once an employee recognizes that there will be a physical fight between patrons was also specifically articulated by Mr. Foster as the standard of care that Rhee's McDonald's owed to Patrick Casey and other customers that night. J.A. 560-63 ("This policy [of calling the police] by itself falls below the national standard of care owed to its customer in light of the history of prior crimes in Rhee's McDonald's"). Mr. Foster applied the IAPSC Forensic Methodology and relied upon testimony by the regional security manager, who testified that the corporate policy in all 105 corporate-owned McDonald's restaurants in the Washington region would have been to call the police during the altercation. J.A. 979-82, 992. Mr. Foster stated that the national standard of care required the staff at Rhee's McDonalds to call the police while the Assailants were wrestling in line, and again once the altercation began and it became clear to the shift manager that "there was going to be a physical fight." *Id.*

Rhee's McDonald's had a legal duty to keep Patrick Casey and other patrons safe from the unreasonable risk of physical harm. Rhee's McDonald's concedes

that to fulfill this duty, at a minimum, it was required to call 911 when the trash-talking began.  The standard of care here is commonsense, and well within the ken of a layperson.  Moreover, Plaintiffs have reinforced this commonly known standard of care with expert testimony.  Thus, the District Court's decision granting summary judgment on the basis that Plaintiffs failed to articulate a standard of care on this issue must be reversed.

## IV.    The District Court Granted Defendants' Motions for Summary Judgment Without Ruling on Plaintiffs' Year-old Outstanding Motion to Compel Discovery

On September 1, 2015, Plaintiffs moved to compel production of "documents relating to the number of corporate owned McDonald's restaurants in the Baltimore Washington Region that had security guards in September 2011." J.A. 20; J.A. 1117-1141.   McDonald's Corporation testified that it had responsive documents relating to "locations on where [McDonald's] have security guards," but refused to produce those documents.  J.A. 1120.  Plaintiffs argued in their motion that the "documents requested will show the common practice and standard of care exercised by corporate owned McDonald's' restaurants in the Baltimore-Washington Region." *Id.*

The District Court never ruled on the motion to compel.  J.A. 20-25. Instead, over a year after the motion to compel had been filed, the District Court dismissed Plaintiffs' claims against the McDonald's Defendants by holding that

Plaintiffs' security expert could not establish a standard of care to hire a security guard because Mr. Foster only identified "two McDonald's restaurants in Washington, D.C. that used security guards as of September 2011." J.A. 1056. The District Court found that "Foster does not provide data or estimate as to how many similar restaurants and business actually use security guards." *Id.*

Leaving aside the fact that the District Court completely overlooked Mr. Foster's application of the widely-adopted Forensic Methodology (discussed *supra)* to articulate the standard of care, the District Court's dismissal on these grounds penalized Plaintiffs for failing to produce evidence of comparable restaurants that employed security guards, while simultaneously refusing (for over one year) to compel McDonald's to produce that very same evidence that the Plaintiffs sought during discovery. The District Court's failure to consider the merits of the Plaintiffs' motion to compel prior to ruling on summary judgment is reversible error. *Clark v. Capital Credit & Collection Servs*., 460 F.3d 1162, 1179 (9th Cir. 2006) (holding it was reversible error for district court to fail to "determine the merits of the [plaintiffs'] pending discovery motion before ruling on the summary judgment motions"); *see also Schering Corp. v. Home Ins. Co*., 712 F.2d 4, 10 (2d Cir. 1983) (holding "summary judgment should not be granted while the party opposing judgment timely seeks discovery of potentially favorable information").

48

## V.    Rhee's McDonald's Negligently Failed to Train and Supervise its Employees

The District Court dismissed Plaintiffs' negligent training claim, finding that Plaintiffs did not identify evidence that "Rhee knew or should have known that the staff on duty during the incident at hand was prone to dangerous *or incompetent behavior*." J.A. 1061. (emphasis added). Quite the contrary, Rhee's McDonald's knew that its staff was incompetent because it had a Security Manual detailing the security protocols for the establishment, but it did not train the staff in the security protocols; it did not require that the staff read the security protocols; and it did not even provide a copy of the Security Manual to its staff. J.A. 951; J.A. 910; J.A. 923; J.A. 533. The staff lacked competence because the staff was not trained and Rhee knew his employees were untrained. Moreover, there is a documented history of violence at Rhee's McDonald's; of which the owner is, at the very least, constructively aware. With that knowledge, Rhee's McDonald's provided no training or supervision. J.A. 910; J.A. 533; J.A. 923. The lack of training is demonstrated by no employee calling 911 once they were aware there would be a fight, despite Rhee's acknowledgment that they were required to do so.

District of Columbia law also imposes a duty upon a business to reasonably supervise its employees. *Moore v. District of Columbia*, 79 F. Supp. 3d 121, 143 (D.D.C. 2015) (holding that an expert is not required for negligent supervision cases). Again, the Security Manual reinforces the duty to properly supervise

49

McDonald's employees: "[a]s [Rhee's McDonald's] manager, you are ultimately responsible for enforcing security policies and procedures. By implementing security measures that are fully supported by highly aware crew members, you can better protect your restaurant from crime-related danger." J.A. 563. (citing to Security Manual).

There was no supervision of employees here. Rhee claims to have been unaware of prior violence at Rhee's McDonald's. J.A. 962-64. If that is the case, the reason is because Rhee only goes to Rhee's McDonald's "about twice a month." J.A. 957; *contra* J.A. 104 (franchisee shall "work full-time at their McDonald's"). One of his employees did not even know that Rhee was the owner of Rhee's McDonald's. J.A. 906. Despite being a magnet for late-night, drunken violence, Rhee's McDonald's provided no security training to its employees and provided no oversight or supervision. A jury could reasonably find that Rhee's McDonald's failure in these regards was the proximate cause of the attack on Patrick Casey.

## VI. McDonald's Corporation's Negligence

The District Court did not dispute that, under certain circumstances, McDonald's Corporation could owe a legal duty to patrons of one of its franchises, instead the District Court found that those circumstances did not exist here and dismissed Plaintiffs' negligence claims against McDonald's Corporation by

incorrectly concluding that "there is no evidence here…that McDonald's ever agreed to or actually did dictate, implement, or oversee Rhee's security practices." J.A. 1067.

### A. McDonald's Corporation Had a Duty to Patrick Casey

This Circuit holds that "[t]he law imposes upon individuals certain expectations of conduct, such as the expectancy that their actions will not cause foreseeable injury to another. These societal expectations, as formed through the common law, comprise the concept of duty." *Caldwell v. Bechtel, Inc.,* 631 F.2d 989, 997 (D.C. Cir. 1980). The *Caldwell* court reasoned that, unlike a contractual duty, under tort law a duty is owed to a foreseeable plaintiff. *Id*. at 998.

In *Caldwell*, this Court held that although Bechtel did not have a contractual relationship with the plaintiff, it did have a duty under tort law. *Id.* at 1001-1002. *Caldwell* held that Bechtel's duty to protect the plaintiff, a third party, was derived from its contract with WMATA to supervise the work of the various contractors. *Id.* The court, nonetheless, held the significance of the contract "is that once Bechtel undertook responsibility for overseeing safety compliance, it assumed a duty of reasonable care in carrying out such duties." *Id.* at 1001.

Here, like *Caldwell*, the Franchise Agreement required Rhee to strictly adhere to the entire "McDonalds System" and adopt the Security Manual provided by McDonald's Corporation. J.A. 103; J.A. 107. It further subjected Rhee to

audits, which included questions regarding security, thus creating a duty for McDonald's Corporation to protect Rhee's customers, such as Patrick Casey, from unreasonable risk of physical harm. J.A. 997-98. Recognizing that duty, McDonald's Corporation employs a regional security manager. J.A. 976. One of the responsibilities of the regional security manager is to provide security "consultations" for franchise owned restaurant, as was the case for the 14th St and Verizon Center McDonald's. *Id.*; J.A. 1009. If Rhee's McDonald's fails to adhere to the McDonald's System, McDonald's Corporation can terminate the Franchise Agreement with Rhee's McDonald's. J.A. 110.

Under similar circumstances, other courts have held that "[o]nce McDonald's Corporation assumed the duty to provide security protection…, it had the obligation to perform this duty with due care and competence, and any failure to do so would lead to a finding of breach of duty." *Martin v. McDonald's Corp.*, 572 N.E.2d 1073, 1078 (Ill. App. Ct. 1991). In *Martin*, the appellate court based its holding on almost identical facts, finding that McDonald's Corporation assumed this duty by "preparing a bible for store security operations" and employing a "regional security manager" to ensure compliance with those security operations. *Id.* at 1077-78. The same holds true here. McDonald's Corporation requires adherence to its system, which includes its Security Manual that Rhee (along with at least 105 corporate-owned restaurants) adopted as his security "bible."

52

McDonald's Corporation cannot inject itself into the security apparatus of its franchises and then wash its hands of any liability when the franchise utterly fails (as is the case here) to implement those measures.

McDonald's Corporation recognizes its duty to its franchise customers, as evidenced by its tweet in response to an assault occurring in a Restaurant in 2011 in this region: "there's no room for violence under the Golden Arches & our thoughts are with the victim.  Action has been taken." J.A. 602-05 (written in response to violent assault in a restaurant within Corporation's the Baltimore-Washington region) [Ex. 16]; *contra* J.A. 967-68 (regional security manager took no action). If McDonald's Corporation has the authority and control to take action in response to a violent act occurring within a franchise, then it must have the same responsibility to prevent such an act from occurring.  Like *Caldwell*, it was foreseeable to McDonald's Corporation that if it did not ensure uniformity and compliance with the Security Manual that customers at the franchise owned restaurants, such as Patrick Casey, would be injured. McDonald's Corporation owed a duty to Patrick Casey because it undertook and assumed such a duty through its franchise agreement, its Security Manual and its regional security manager.

### B.    McDonald's Corporation is Vicariously Liable for the Acts of Rhee's McDonald's

McDonald's Corporation is also vicariously liable to Plaintiffs for the

53

actions of its actual and/or apparent agent, Rhee's McDonald's, as it had the power to revoke Rhee's franchise for failing to comply with the McDonald's System. *See District of Columbia v. Hampton*, 666 A.2d 30, 38 (D.C. 1995) (existence of principal-agent "depends on the particular fact of each case," with the most important factor being "the power to control the servant's conduct."); *Butler v. McDonald's Corp.,* 110 F. Supp. 2d 62, 67-68 (D.R.I. 2000) (holding McDonald's Corporation's franchise agreement demonstrates the Corporation's control over franchise); *Miller v. McDonald's Corp.,* 945 P.2d 1107 (Or. Ct. App. 1997) (holding that McDonald's Corporation sufficiently maintains control for purposes of agency liability through its "McDonald's System").

The District Court granted summary judgment to McDonald's Corporation on Plaintiffs' vicarious liability claim solely on the basis that its agent – Rhee's McDonald's – was not liable to Plaintiffs. As set forth above, because Plaintiffs' claims against Rhee's McDonald's should be reinstated and remanded for trial, the vicarious liability claims against McDonald's Corporation must also be reinstated and remanded for trial.

## CONCLUSION

This Court should reverse the District Court's dismissal of: (1) Plaintiffs' wrongful death claims against all Defendants; (2) Plaintiffs' dram shop claims against the Bar Defendants; and (3) Plaintiffs' negligence claims against

McDonalds Corporation and Rhee's McDonald's.    These claims should be remanded for trial.


Dated:        March 20, 2017            Respectfully submitted,

                                        /s/ Brendan J. Klaproth
                                        Brendan J. Klaproth (D.C. Bar No. 999360)
                                        Jesse C. Klaproth
                                        Klaproth Law PLLC
                                        406 5th Street NW, Suite 350
                                        Washington, DC 20001
                                        Tel:    202-618-2344
                                        Email: bklaproth@klaprothlaw.com
                                                jklaproth@klaprothlaw.com
                                        *Attorneys for Appellants*

## CERTIFICATE OF COMPLIANCE

1. This brief complies with this court order dated March 20, 2017, because this brief does not exceed 13,000. It contains <u>12,953</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Size 14 Times New Roman font.

   /s/ Brendan Klaproth

## CERTIFICATE OF SERVICE

I hereby certify that I have this March 20, 2017, filed the foregoing Brief of Appellant using the Court's CM/ECF system which will send notification to counsel of record for the District of Columbia.

   /s/ Brendan Klaproth

# ADDENDUM

# TABLE OF CONTENTS

Chapter 27. Negligence Causing Death

    D.C. Code § 16-2701. Liability; damages; prior recovery as
precluding action ..................................................................... ADD 1

    D.C. Code § 16-2702. Party plaintiff; statute of limitations ................. ADD2

MPD Incident Reports for Crime in Rhee's McDonald's and Immediate
Vicinity two years prior to Patrick Casey's death (See J.A. 642-809) ............. ADD3

i

## STATUTES

Mr. and Mrs. Casey appeal the District Court's application of a one year statute of limitation under the District of Columbia's wrongful death statute. The relevant portions of the statute are set forth below:

**Chapter 27. Negligence Causing Death**

**D.C. Code § 16-2701. Liability; damages; prior recovery as precluding action.**

(a) When, by an injury done or happening within the limits of the District, the death of a person is caused by the wrongful act, neglect, or default of a person or corporation, and the act, neglect, or default is such as will, if death does not ensue, entitle the person injured, or if the person injured is married or domestic partnered, entitle the spouse or domestic partner, either separately or by joining with the injured person, to maintain an action and recover damages, the person who or corporation that is liable if death does not ensue is liable to an action for damages for the death, notwithstanding the death of the person injured, even though the death is caused under circumstances that constitute a felony.

(b) The damages shall be assessed with reference to the injury resulting from the act, neglect, or default causing the death, to the spouse or domestic partner and the next of kin of the deceased person; and shall include the reasonable expenses of last illness and burial. Where there is a surviving spouse or domestic partner, the jury shall allocate the portion of its verdict payable to the spouse or domestic

**ADD 1**

partner and next of kin, respectively, according to the finding of damage to the spouse or domestic partner and next of kin. If, in a particular case, the verdict is deemed excessive, the trial judge or the appellate court, on appeal of the cause, may order a reduction of the verdict. An action may not be maintained pursuant to this chapter if the party injured by the wrongful act, neglect, or default has recovered damages therefor during his life.

(c) For the purposes of this section, the term "domestic partner" shall have the same meaning as provided in § 32-701(3).

**D.C. Code § 16-2702. Party plaintiff; statute of limitations.**

An action pursuant to this chapter shall be brought by and in the name of the personal representative of the deceased person, and within 2 years after the death of the person injured.

**ADD 2**

| **MPD INCIDENT REPORTS FOR CRIME IN RHEE'S MCDONALD'S AND IMMEDIATE VICINITY TWO YEARS PRIOR TO PATRICK CASEY'S DEATH (*See* J.A. 642-809)** | | |
|---|---|---|
| **Date** | **Crime** | **Description** |
| 11/10/2009 | Assault | Victim was standing in line at Rhee's McDonald's when he was punched in the face by an assailant. The assailant fled Rhee's McDonald's. The attack was unprovoked. |
| 01/24/2010 | Assault with significant bodily injury | Inside bar next door to Rhee's McDonald's, assailant groped victim's girlfriend and then "head-butted" victim causing significant injuries. |
| 05/24/2010 | Assault with significant bodily injury | Victim was found less than one block from Rhee's McDonald's at 2:40am.  He was found with a lot of blood on the sidewalk.  Assailants hit the victim with a blunt object.  At the hospital it was determined, the victim had a "broken jaw, and was very intoxicated." |
| 07/17/2010 | Assault | Victim was standing in line to order food at Rhee's McDonald's. The assailant cut in front of victim in line and a verbal altercation ensued. The assailant then punched the victim in the nose. The assailant fled. The victim was transported to the hospital |
| 08/29/2010 | Destruction of property | The criminal "was highly intoxicated and became irate…over not being served promptly" in Rhee's McDonald's.  The criminal proceeded to break the change machine on the counter. |
| 10/17/2010 | Assault with a dangerous weapon | In front of 1919 M Street, the 3 victims were approached by the 4 assailants who asked them for money. The 3 victims were then attacked, which included getting "hit in the head with a table" and "punches to the head and neck." The female victim was knocked unconscious from the attack. |
| 11/06/2010 | Damage to property | Customer broke the front door to Rhee's McDonald's |
| 01/28/2011 | Assault | Assailant "became irate" in Rhee's McDonald's and threw coins at the Manager of the McDonald's. |
| 02/06/2011 | Assault with a dangerous weapon and significant | A customer in Rumors, a bar less than half a block from Rhee's McDonald's, was struck over the head with a beer bottle.  The customer's friend was also struck with an unknown object on the right side of his face. |

**ADD 3**

| | bodily injury | |
|---|---|---|
| 02/19/2011 | Unlawful Entry | Barred customer entered Rhee's McDonald's, and refused to leave. |
| 03/19/2011 | Assault with Significant Bodily Injury | The victim was inside Rhee's McDonald's when the assailant "started to verbally abuse [the witness] and throw french fries." The two assailants then pushed the victim and "began to punch [the victim] about the face with closed fists causing" injuries to the victim. The victim's female friend was knocked over into a table.  The victim called the police. |
| 06/16/2011 | Robbery with gun | While at Rhee's McDonald's, the four assailants surrounded the female victim. One of the assailants then "sprayed mace in [the victim's] face and then the other [assailant] punched and forced her to the ground."  The assailants then took the victim's purse and then fled. |
| 07/17/2011 | Assault on a police offer | "a large fight occurred" at the corner of 19th and M Street (just outside the McDonald's). |
| 07/30/2011 | Assault with a dangerous weapon | While "inside of the [Rhee's McDonald's], the victim "was involved in an argument with [the assailant]. The assailant "with 9 other males" followed him outside of the McDonald's "at which time [the victim] turned around and was pepper sprayed by [the assailant]." |
| 09/04/2011 | Assault | A customer in Camelot—the same bar Ward was in before going to McDonald's and less than 1 block from Rhee's McDonald's—assaulted two individuals as he was leaving, and ripped the stair railing off the wall. |

**ADD 4**